IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE AT KNOXVILLE

| | | |
|---|---|---|
| RONALD TAYLOR, Plaintiff, | ) ) ) | |
| v. | ) ) | No. 3:13-CV-369 |
| BRADLEY KIDWELL, Defendant. | ) ) ) | |
| RONALD TAYLOR, Plaintiff, | ) ) ) ) | |
| v. | ) ) | No. 3:13-CV-370 |
| JASON STOKES, Defendant. | ) ) ) | |
| RONALD TAYLOR, Plaintiff, | ) ) ) ) | |
| v. | ) ) | No. 3:13-CV-371 |
| RICHARD SCARBROUGH, Defendant. | ) ) ) | |
| RONALD TAYLOR, Plaintiff, | ) ) ) ) | |
| v. | ) ) | No. 3:13-CV-372 |
| JASON LAWSON, Defendant. | ) ) ) | |

## **MEMORANDUM OPINION**

This matter is before the Court for consideration of Defendants' Motion for Summary

Judgment.[1] [doc. 73] For the reasons stated herein, and by operation of a contemporaneously

---

[1] Defendants' document is styled as a Motion to Dismiss Pursuant to Rule 12(b)(6) or a Motion for Summary Judgment. As to some of the Plaintiff's allegations, the Defendants' supporting brief argues only for summary judgment under Rule 56, and moreover, addresses evidence outside the pleadings, including depositions and discovery materials. Accordingly, pursuant to Rule 12(d) of the Federal Rules of Civil Procedure, the Court treats

filed Order the Defendants' Motion will be **GRANTED** and this case will be **DISMISSED**.

Plaintiff, Ronald Taylor, acting pro se, filed action against four employees of the Clinton Police Department, Officer Bradley Kidwell, Officer Jason Lawson, Sergeant Jason Stokes, and Chief of Police, Richard Scarbrough. Plaintiff filed separate actions against each of the Defendants. This Court consolidated the complaints and designated the above-styled case (no. 3:13-cv-369) as the lead case. All docket references herein are to the lead case.

Mr. Taylor alleges that the defendants harassed and conspired against him through multiple incidents beginning in 2011. Defendants identify seven individual incidents:

First, Mr. Taylor alleges that, sometime in 2011, Officer Kidwell and Officer Lawson responded to Mr. Taylor's complaint that someone was causing damage to his property. This encounter ended with the officers threatening to incarcerate him if he attempted to press charges against the alleged vandal.

Second, he alleges that an incident occurred when Mr. Taylor attempted to file a formal complaint over the Officer Kidwell's and Lawson's conduct. He claims that Sergeant Stokes, who took the report, was uncivil toward him and threatened to incarcerate him if the report contained falsities.

Third, Mr. Taylor claims that Officer Kidwell appeared at his home unprompted in May 2012 and shouted at him in a threatening manner, evidently in retaliation for Mr. Taylor's having filed the earlier complaint against him. When he attempted to file a second complaint against Officer Kidwell, he was prevented from doing so by Chief Scarbrough, who allegedly stated that he was aware of Officer Kidwell's unprompted stops at Mr. Taylor's home. Mr. Taylor

---

the Motion as a motion for summary judgment with regard to the claims on which additional proof is submitted and those for which Defendants argue under the summary judgment standard.

attempted to file a complaint against Chief Scarbrough with the city manager, Richard Houck. It is unclear from Plaintiff's complaint whether this attempt was successful.

Fourth, Mr. Taylor alleges that he attended a city council meeting and accused Roger Houck of failing to protect him from the harassment. Following that, he implies that city police officers retaliated by knocking on his door the next day and informing him that he violated a city ordinance regarding "junk cars." It is unclear whether Mr. Taylor received any citation from the incident.

Fifth, he claims that Officer Stokes arrested him, apparently for domestic violence, following an incident at his mother's home involving his adult niece and nephew, who he claims had a history of burglarizing and assaulting his mother. Mr. Taylor claims that he was attempting to protect his mother from them during one such episode and had not been violent towards anyone. The incident resulted in his being jailed and denied prescription medication for 48 hours.[2]

Sixth, he claims that he attended a city council meeting in January 2013 and that Roger Houck, city manager, acknowledged that he was aware that police officers were harassing Mr. Taylor, but refused to take action. He claims that other city councilmen concealed the harassment, but does not identify specific persons or conduct.

---

[2] The Court notes that Mr. Taylor mentions a prior incident, in which Sergeant Stokes and other officers responded to an incident at a house he rented to his mother. Mr. Taylor states that his niece and nephew were burglarizing his mother's home and Officer Stokes refused to order them to leave the property at Mr. Taylor's request, based upon the niece and nephew's claims that they lived there. Officers eventually ordered them to leave. Mr. Taylor does not allege how this incident violated his rights and the Court does not view a factual dispute that was ultimately resolved in Mr. Taylor's favor as rising to the level of a civil rights violation.

Seventh, he alleges that he was harassed in traffic by Officer Lawson, who detained him for no reason. Mr. Taylor made attempted a citizen's arrest, which was unsuccessful. He then followed Officer Lawson to the police station and alleges that Sergeant Stokes refused to allow him to make a complaint against Officer Lawson.

Plaintiff's complaint also makes multiple references to other city officials who have not been named as defendants, including other police officials, city councilmen, and employees of the District Attorney's office. Plaintiff complains that the officers' conduct was in violation of his constitutional rights and filed action against each of them on June 4, 2013. Although Mr. Taylor does not specifically identify his legal theories, the gravamen of his complaint is that his constitutional rights were violated. His claims therefore sound in 42 U.S.C. § 1983, which affords a right of action to persons whose federal rights are violated by defendants acting under color of state law.

## LAW AND ANALYSIS

### I. Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988) (quoting Fed. R. Civ. P. 56(c)). The moving party may discharge its burden by demonstrating that the non-moving party has failed to establish an essential element for which he or she bears the ultimate burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party need not support its motion with affidavits or other materials negating the opponent's claim. *Celotex Corp.,* 477 U.S.

at 323. Although the moving party has the initial burden, that burden may be discharged by a "showing" to the district court that there is an absence of evidence in support of the non-moving party's case. *Celotex Corp.*, 477 at 325 (emphasis in original).

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to present specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). The non-moving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. *Liberty Lobby,* 477 U.S. at 255. The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Liberty Lobby,* 477 U.S. at 251-52.

Plaintiff did not file an explicit response to the Defendants' Motion. However, Plaintiff did file a document in response [doc. 79] to video evidence that the Defendants submitted in conjunction with their Motion, and his argument in that document touches the issues raised in Defendants' Motion. Because Plaintiff is acting *pro se* in this matter, the Court will construe his filing as a response to the Defendants' Motion to the extent that it is applicable. The Motion is therefore ripe for adjudication.

As to the arguments that are not explicitly opposed in Plaintiff's response, this fact alone does not entitle the Defendants to summary judgment. The Court must still examine the Defendants' motion to determine if they have met their initial burden of showing that there are

no material issues of fact and they are entitled to judgment as a matter of law. *Carver v. Bunch,* 946 F.2d 451 (6th Cir. 1991).

## II.     Statute of Limitations

Defendants argue that the statute of limitations bars any claim related to incidents that occurred more than one year prior to the commencement of this action. Claims brought pursuant to § 1983 are characterized as personal injury claims and are governed by the relevant state's statute of limitations for such claims. *Wilson v. Garcia*, 471 U.S. 261, 280 (1985) (superseded by statute as to claims arising under laws enacted after 1990 as stated in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004)). Tennessee's statute of limitations for personal injury actions is one year from the date that the cause of action accrued. Tenn. Code Ann. § 28-3-104. While state law determines the applicable limitations period, federal law sets the "accrual" date as the date on which the plaintiff knew or had reason to know of his injury. *See McCune v. City of Grand Rapids*, 842 F.2d 903, 905 (6th Cir. 1988) (citing *Sevier v. Turner,* 742 F.2d 262, 272 (6th Cir.1984)).

Mr. Taylor filed his complaint against the Defendants on June 4, 2013. Therefore, any claims arising prior to June 4, 2012 are barred by the one-year statute of limitations for § 1983 actions. The first incident, when Officer Kidwell and Officer Lawson refused to take action against someone allegedly causing damage to Mr. Taylor's property and threatened him with incarceration should he attempt to press charges, occurred in 2011. The second incident, when Mr. Taylor alleges he was prevented from lodging a complaint against Officers Kidwell and Lawson occurred at or near the same time, also in 2011. The third incident, when Officer Kidwell allegedly entered his property without cause and acted in a threatening manner toward him, occurred in "late [M]ay of 2012." Plaintiff's complaint does not name a date for the seventh

incident, but he testified during a deposition that it occurred on or about February 1, 2012. Other than an infringement of his rights, Plaintiff does not identify any injury he suffered as a result of the first, second, third, and seventh incidents, and his immediate attempts to take action and file complaints show that Mr. Taylor was aware of the alleged rights violations as they occurred. Accordingly, the Defendants have met their burden of showing that there are no undisputed facts and that the incidents alleged cannot form the basis of a § 1983 claim. Defendants are entitled to judgment as a matter of law as to any claims based on the first, second, third, and seventh incidents described in Mr. Taylor's complaint. These claims will be **DISMISSED**.

### III. Mr. Taylor Failed to Link Any Party Defendant to Incidents Four and Six

Defendants next move to dismiss Plaintiff's claims as to incidents four and six under Rule 12(b)(6). When reviewing a motion for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the court must construe the complaint in the light most favorable to the plaintiff and accept the factual allegations in the complaint as true. *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998) (citing *Meador v. Cabinet for Human Resources,* 902 F.2d 474 (6th Cir. 1990), *cert. denied*, 498 U.S. 867, 111 S.Ct. 182, 112 L.Ed.2d 145 (1990)). The court does not have to accept as true legal conclusions or unwarranted factual inferences, *Morgan v. Church's Fried Chicken,* 829 F.2d 10 (6th Cir. 1987), and may dismiss a complaint pursuant to Rule 12(b)(6) "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984).

Incidents four and six are very similar. In both instances, Plaintiff alleges that he attended a city council meeting and confronted Roger Houck about his being harassed by the police. Mr. Houck and his fellow councilmen refused to intervene against the harassment. Incident four

alleges that unidentified city police officers, including an "Officer Black" came on to his property the day following the city council meeting to either enforce or warn Mr. Taylor that he was in violation of an ordinance regarding "junk cars."

Mr. Taylor does not state in any comprehensible way how his rights were violated in these events. Rather, he asserts an unsupported conclusion that the council members' "complacency" amounts to a crime and that he finds it "odd and suspicious" that officers would harass him for "such a petty thing as my car not being pretty enough for this neighborhood[.]" Moreover, however, Plaintiff fails to make any allegation that any of the movants were involved in either event. Because the Court cannot enter a judgment against a non-party, even if all of Plaintiff's allegations are true, he has failed to state any cognizable legal claim against on which relief can be granted as to any Defendant in this suit. The movants have met their burden of showing that there are no disputed facts and that they are entitled to a judgment as a matter of law on these claims. Defendants' Motion to Dismiss will be **GRANTED**.

## IV.   Incident Number Five

Plaintiff's most serious allegations regard Incident Five, when he was arrested following a domestic dispute between himself, his niece, Stephanie Taylor, his nephew, Andrew Taylor, and his mother, Patricia Yeatman on September 26, 2012. As a preliminary matter, Plaintiff does not allege that either Chief Scarborough or Officer Kidwell were in any way involved in this incident. Plaintiffs' claims against Defendants Scarborough and Kidwell as to his arrest and detainment are therefore **DISMISSED**.

As to Sergeant Stokes and Officer Lawson, Mr. Taylor claims that Stokes unlawfully arrested him following an incident at his mother's house. Plaintiff alleges that his niece and

nephew were assaulting Ms. Yeatman in her home and that he was attempting to protect her. He claims that Stokes, who responded to the incident, conspired with his niece and nephew to fabricate charges against him and wrongfully arrested him for domestic assault. Officer Lawson transported Mr. Taylor to the jail. Mr. Taylor alleges that both officers denied him food and medical care during the arrest and transport. Officer Lawson allegedly instructed jailers to treat Mr. Taylor harshly. Thereafter, jail officers deprived him of food and medicine. Mr. Taylor is diabetic and suffers from various medical conditions. He also claims that Sergeant Stokes intentionally delayed completing paperwork, so that he was held for forty-eight hours rather than twelve.

The first issue is whether Mr. Taylor's arrest was unlawful. The Fourth Amendment secures a person's right to be free from unreasonable seizure. Any arrest requires probable cause. *See Centanni v. Eight Unknown Officers*, 15 F.3d 587, 592 (6th Cir. 1994). "[A] warrantless arrest must be supported by the existence of probable cause of sufficient weight to support a belief that the *individual detained committed a criminal offense*." *United States v. McNeal*, 955 F.2d 1067, 1071 (6th Cir. 1992) (emphasis in original). As long as there is probable cause to make an arrest, a warrantless arrest does not violate the Fourth Amendment. *U.S. v. Strickland*, 144 F.3d 412, 415 (6th Cir. 1998) (citing *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988)). However, an arrest without probable cause does violate the Fourth Amendment. *Crockett v. Cumberland Coll.*, 316 F.3d 571, 580 (6th Cir. 2003).

Defendants argue that there was probable cause to arrest Mr. Taylor for domestic assault. Tennessee law defines domestic assault as intentionally, knowingly, or recklessly causing injury, fear, or offensive physical contact to any person related to the offender by blood or marriage.

Tenn. Code Ann. § 39-13-111. There is no question that Stephanie Taylor is Mr. Taylor's niece. Stokes submitted an affidavit [doc. 74] attesting that Ms. Taylor reported to Stokes that Mr. Taylor had shoved her to the ground. His affidavit further states that Ms. Taylor showed visible injuries consistent with her account, that she signed a voluntary statement, and that he photographed her injuries. Ms. Taylor's statement [doc. 79-1] states:

> I was standing in front of the hallway and Ronald Taylor was threatening me and telling me that he was going to hurt me if i didn't leave or move from the house then he pushed me down and hurt my elbow and foot. This occurred at 211 Ridgeview Dr. 9-26-12 about 4:30pm

Defendants also submitted three discs containing audio recording of the incident [Manually filed Exhibits A, C-1, C-2. The videos corroborate Officer Stokes's account that Stephanie Taylor reported to him that Mr. Taylor had shoved her (Manually Filed Exhibit C-1 at 16:51:24-16:51:40; 17:12:33-17:12:55). She further expressed a desire to press charges, told Stokes that she had been injured in the incident, and stated that she was in fear of Mr. Taylor. (Manually Filed Exhibit C-1 at 17:13:40 – 17:15:20).

Plaintiff's response, liberally construed, is that there was not probable cause to arrest him because his niece and nephew were the actual criminals. Specifically, he alleges they were burglarizing his mother and that the officers authorized the burglary. Regardless of whether the evidence shows any such thing, which it does not, the officers' failure to arrest the younger Taylors for alleged crimes against Mr. Yeatman does not equate to a violation of Mr. Taylor's constitutional rights and does not preclude a finding of probable cause to arrest and detain him.

Mr. Taylor also argues that his niece and nephew were lying to Stokes about the events that had transpired. Much of the discussion on the audio recording is evidence of the poor relationship between Ms. Yeatman, Stephanie Taylor, and Andrew Taylor. There is also

considerable on-scene dispute as to whether Mr. Taylor intentionally shoved Ms. Taylor or if he acted in Ms. Yeatman's defense. In short, the audio makes clear that the accounts given to the officers conflicted with regard to Mr. Taylor's actions and intent. However, conflicting stories do not preclude probable cause for arrest, and it is not necessary for an officer to obtain airtight evidence that a suspect committed a crime before he can be detained; if either were so, warrantless arrests would rarely be constitutional. Therefore, the veracity of Ms. Taylor's statements is irrelevant, as is the question of whether the evidence was sufficient to convict Mr. Taylor of domestic assault, or even whether an assault actually occurred at all. The only relevant question is whether officers had probable cause to *believe* that an assault had occurred. *United States v. McNeal*, 955 F.2d at 1071. The Court finds that they did. There is no dispute that an incident occurred and that there was some physical contact between Mr. Taylor and his niece. She reported to Officer Stokes that Mr. Taylor intentionally shoved her and that she was afraid of him. She further represented that she was injured, however slightly, and produced physical evidence of her injury. That is more than sufficient evidence to support a belief that Ms. Taylor had been assaulted. Mr. Taylor's poor health at the time of the arrest has no bearing on whether there was probable cause to arrest him, nor does the litany of other circumstances that Mr. Taylor argues in his response (e.g., that his nephew was high during the incident, that Ms. Taylor's children were distracting during the incident, that Officer Stokes smiled during the incident). Mr. Taylor's claims that he was unlawfully arrested will be **DISMISSED**.

Mr. Taylor next argues complains that he was denied access to food and to his necessary medication during his detainment. To begin, any treatment that Mr. Taylor while he was detained in the Anderson County jail is not a proper basis for claims in this suit. Mr. Taylor may have a claim against someone, but he was not in the custody of any defendant named in this action

during that time. The only possible grounds for such a violation as to these Defendants are allegations that he was denied necessary care during his arrest and transport.

At all times relevant to this suit, Mr. Taylor was a pretrial detainee and was entitled to adequate medical treatment under the Fourteenth Amendment. *Watkins v. City of Battle Creek*, 273 F.3d 682, 685 (6th Cir. 2001). "To sustain a cause of action under § 1983 for failure to provide medical treatment, plaintiff must establish that the defendants acted with 'deliberate indifference to serious medical needs.'" *Id.* at 686 (quoting *Estelle v. Gamble*, 429 U.S. 97 (1976)). Discussing the standard for deliberate indifference, the Watkins court stated:

> Deliberate indifference is not mere negligence. Deliberate indifference requires that the defendants knew of and disregarded a substantial risk of serious harm to [the detainee's] health and safety. This standard is subjective. It is not enough that there was a danger of which an officer should objectively have been aware. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. If an officer fails to act in the face of an obvious risk of which he should have known but did not, the officer has not violated the Eighth or Fourteenth Amendments.

*Id.* (internal citations and quotations omitted). Review of the audio and video recording taken from Sergeant Stokes's cruiser shows that Mr. Taylor informed officers that his medication was overdue as he was being arrested. Defendants refused to pause the arrest, but stated that Mr. Taylor could take the medications with him and that they would inform the nurse at the jail. (Manually Filed Exhibit C-2 17:31:20-17:32:10). Mr. Taylor did not explain why he hadn't taken his medication prior to the incident. He did not request food or water. The video footage shows Mr. Taylor walking upright, and without apparent distress.

Review of the audio and video recording taken from Officer Lawson's cruiser shows that Mr. Taylor was in the cruiser for approximately ten minutes. (Manually Filed Exhibit A at 17:32:58–17:43:35). During that time, he informed Officer Lawson that he "was on medication"

and requested water one time. Officer Lawson told Taylor that he did not have any water in the cruiser but that it would be available at the county jail. (Manually Filed Exhibit A 17:39:40 – 17:40:25). Mr. Taylor did not request food or medication. The video clearly shows that he was upright, coherent, and alert in the cruiser. He was able to make small talk and to discuss the incident. Mr. Taylor did not exhibit any visible sign of medical need during transport, nor did he verbalize one, and he was not deprived of medical treatment.

Furthermore, there is no evidence that Officer Lawson acted with deliberate indifference to even minor needs. In fact, the video evidence shows that Lawson was sensitive to Mr. Taylor's discomfort and attempted to accommodate him multiple times. Officer Lawson turned on the air conditioner in the vehicle at Mr. Taylor's request and in response to his complaint that he "was having trouble breathing … [because] I have pneumonia." (17:34:32 – 17:35:00). Officer Lawson assisted Mr. Taylor in exiting the vehicle. He relayed Mr. Taylor's medical condition to intake personnel at the Anderson County Jail, stating that he "has a hard time standing without his cane," "is on a lot of medication" and "has to have water all the time." (Manually Filed Exhibit A 17:48:00 – 17:48:20). Likewise, Mr. Taylor fails to present any credible evidence that Mr. Lawson ever instructed any person to treat him harshly.

Mr. Taylor's arguments that his treatment was tantamount to "torture" and "attempted murder" are wholly without merit. The undisputed evidence shows that there was no obvious or substantial "risk of serious harm" to Mr. Taylor during his arrest and transport. The Defendants' actions do not constitute deprivation of necessary medical care, and they did not act with deliberate indifference toward Plaintiff's condition. His claims of inadequate medical treatment will be **DISMISSED**.

Finally, Plaintiff alleges that his rights were violated because he was detained for forty-eight hours, when he could have been released sooner. The law does not require that a detainee be released on bond as soon as humanly possible and forty-eight hours is presumptively reasonable under the Supreme Court case *County of Riverside v. McLaughlin.* 500 U.S. 44, 56 ("judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of [the Fourth Amendment]."). Plaintiff has offered no probative facts to show that his release was unnecessarily delayed in any other way, and this Court does not give merit to the unsupported statement that Officer Stokes "refused" to fill out paperwork at the summary judgment phase. Mr. Taylor's claims that his forty-eight hour detainment violated his constitutional rights will be **DISMISSED**.

## V.  Qualified Immunity

Finding that the Defendants' Motion for Summary Judgment will be **GRANTED** on other grounds, the Court declines to address the Defendants' arguments of qualified immunity.

ENTER:

s/ Leon Jordan
United States District Judge